IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:21-CR-21-FL-2

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| TANNA NASH, | ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the court for hearing on the government's appeal of a magistrate judge's prior order releasing defendant on conditions. (DE 19). At hearing, the court reversed the magistrate judge's order and ordered defendant detained pending trial. The court memorializes herein the reasons for its decision.

**BACKGROUND**

Indictment filed March 10, 2021, charges defendant with conspiracy to possess with intent to distribute and distribute methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(A) (count one); distribution of methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) (counts two, three, four, and five); money laundering conspiracy, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (count seven); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (count nine).

Co-defendant Joseph Willie, Jr. ("Willie") is charged also in all of the same counts except for count nine, as well as an additional distribution count (count six). Co-defendant Danillie Willie ("Danillie Willie") is charged also in count seven, as well as an additional money laundering count (count eight). Co-defendant Cecile McDowell ("McDowell") is charged also in count seven, as

well as an additional money laundering count (count ten). Co-defendant Anthony Walker, Jr. ("Walker") is charged also in counts one and seven.

Defendant was arrested in the Middle District of Florida on March 16, 2021. The government filed the instant appeal on March 17, 2021, along with a motion to stay a release order by a magistrate judge in that district (hereinafter, the "magistrate judge's release order"). Documents received from that district include a waiver of Rule 5 and 5.1 hearings, an order appointing Federal Public Defender, a Due Process Protections Act order, an order of removal, and sealed court minutes of an initial appearance noting that defendant was released with conditions as set forth in a separate order,[1] with 48 hour stay thereof.

That same day, this court entered an order staying the magistrate judge's release order, and ordering defendant detained pending further proceedings on the government's appeal. Initial appearance was held in this court on April 28, 2021. At hearing on the instant appeal, on May 17, 2021, the court heard government's evidence comprising testimony by Nellie Woodruff ("Woodruff"), an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives; and Kathryn Cochran ("Cochran"), a financial analyst with the United States Attorney's Office. The court heard defendant's evidence comprising testimony by Tammy Osby ("Osby"), defendant's mother and proposed third-party custodian. Upon conclusion of evidence and argument, the court set forth orally its reasons for reversing the magistrate judge's release order and ordering detention pending trial.[2]

---

[1] Although an order setting conditions of release is noted in the clerk's sealed minutes, there is no separate order included in the materials transmitted from the Middle District of Florida, and the parties confirmed at hearing that they were not able to locate any such order on the record of the case in the Middle District of Florida.

[2] The court also granted defendant's oral motion for extension of time to file pretrial motions and to continue arraignment, setting a deadline of July 7, 2021, for pretrial motions, and arraignment for the August 10, 2021, term, with speedy trial time excluded accordingly.

# COURT'S DISCUSSION

A.  Standard of Review

If a person is ordered released by a magistrate judge pending trial, the attorney for the government may file with the district court a motion for revocation of the order. 18 U.S.C. § 3145(a). The district court conducts a de novo review of the decision by the magistrate judge. United States v. Clark, 865 F.2d 1433, 1437 (4th Cir. 1989); United States v. Williams, 753 F.2d 329, 333 (4th Cir. 1985); United States v. Ramey, 602 F. Supp. 821, 822-24 (E.D.N.C. 1985). In doing so, the court may conduct an evidentiary hearing if it is necessary or desirable in carrying out the review. Williams, 753 F.2d at 333.

In determining whether there are conditions of release, pursuant to 18 U.S.C. § 3142(c), that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, the court must take into account the available information concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . controlled substance. . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release . . . .
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). It is only when the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," that it must order the detention of the defendant before trial. Id. § 3142(e)(1). "Subject to rebuttal by the [defendant]," the court presumes detention pending trial is required under § 3142(e)(1) if the court finds probable cause to believe the defendant committed a controlled substances offense with a maximum term of imprisonment of ten years or more, or an offense under 18 U.S.C. § 924(c). Id. § 3142(e)(3)(A), (e)(3)(B).

The burden of proof is on the government to demonstrate by a preponderance of the evidence that detention is necessary to assure the appearance of the defendant, United States v. Stewart, 19 F. App'x 46, 48–49 (4th Cir. 2001), or to demonstrate by clear and convincing evidence that defendant poses a danger to the community, 18 U.S.C. § 3142(f). "Even in a presumption case, the government retains the ultimate burden of persuasion" to show that detention is warranted. United States v. Mattis, 963 F.3d 285, 291 (2d Cir. 2020).

B.     Analysis

Based upon the controlled substance charges for which defendant is indicted, the court begins with the presumption that detention is required in the instant case due to the seriousness of the offenses for which the government has demonstrated probable cause. See 18 U.S.C. § 3142(e)(3)(A); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). The testimony offered by the government at hearing further establishes that the evidence against defendant is strong as to the offenses charged. The drug trafficking in which defendant participated involved distribution by mail of high-purity methamphetamines from California to ten or more states, in amounts of several hundred pounds or more, utilizing Grape Street Crips gang contacts in Tennessee, Florida, Nevada, and North Carolina, among other locations. Defendant participated in money laundering

4

by receiving proceeds of drug transactions, setting up and maintaining bank accounts and applications in her name for receipt of currency, and concealing currency and transactions.

Turning to defendant's history and characteristics, the court finds that a number of factors demonstrate no combination of conditions will reasonably assure appearance and safety. The court considers first defendant's close relationship with co-defendant Willie, starting as girlfriend and then as wife during the period of offense conduct. Several pictures introduced by the government show defendant appearing with co-defendant Willie, in one instance displaying a gang symbol for the Grape Street Crips, in two instances with co-defendant Willie holding a stack of currency, and in other instances with social media messages showing symbols for Grape Street Crips. Co-defendant Willie is a high ranking member of the Grape Street Crips and, by her relationship with Willie, defendant also maintains a position of influence within the gang. By virtue of her close relationship and activities associated with the gang, defendant presents a danger to the community and potential witnesses if released under the proposed conditions.

The court also takes into account troubling records of telephone conversations around and after the time of defendant's arrest, with co-defendant Willie and proposed third-party custodian, Osby. The court finds testimony of Osby concerning as her testimony relates to the purpose of the phone calls, where she contends that calls were for purposes of collecting "Girl Scout Cookies" and "bread" from the residence of defendant and co-defendant Willie. Upon the totality of evidence presented, these are more likely references to drugs or drug proceeds in the form of currency, intended to be used in the event of arrest to supply funds for counsel or other purposes.

Osby's explanation for why she took a vehicle from the parking garage of defendant's residence and moved it to closer to Osby's residence, following arrest, also is troubling. And Osby's explanation regarding her handling of packages she found in the car also raises credibility

5

questions. If packages in the car merely contained shipments of t-shirts and sweatshirts for customers, then there is no reason why those packages could not have been mailed out as addressed. Instead, it is reasonable to infer in light of the circumstances presented those packages were intended as a continuation of the drug trafficking and money laundering conspiracies charged in the indictment.

With respect to defendant's other activities in the community, the court finds based upon the evidence presented that defendant engaged in side hustles and sham business activities. In particular, the purported home care business run by defendant and co-defendant Willie, through which they obtained funding through Medicaid, was not a legitimate business but was instead a sham business that supplied no meaningful home care services. Moreover, defendant used this sham business improperly to obtain Small Business Administration loans intended for COVID-19 relief. It is also reasonable to infer from the evidence presented that the purported "Brainstorming" clothing business operated by defendant and co-defendant Willie was a front for drug trafficking and money laundering activities. Upon analysis, it was not a profitable clothing business in itself.

Relatedly, the court finds not credible Osby's testimony that she counseled defendant to open bank accounts for the "Brainstorming" business funds, and provided other business advice to defendant, where defendant purportedly herself has a Masters of Business Administration and would be expected to know rudimentary business practices such as use of bank accounts. Instead, the court finds that defendant was employed in the drug trafficking and money laundering conspiracy as the "brains" of the operation, critical to the movement of money and the laundering of the same.

The court has considered defendant's history of employment, which was represented at hearing to be as a Section 8 compliance specialist for a county government agency. The court does

not find this to be a mitigating factor under the circumstances of this case, where defendant reasonably is held accountable for currency well in excess of her earnings from her county government job. Based upon financial analysis, over $250,000 in currency traced to defendant was from unaccountable source, and over $830,000 in currency traced to co-defendant Willie was from unaccountable source. Moreover, it is relevant both to the inadequacy of the proposed third-party custodian and her relationship with defendant, that Osby was not truthful to defendant's employer as to why she was not able to return to work. Osby falsely stated that defendant's absence was due to COVID-19, and did not initially or at any point thereafter disclose that it was due to defendant's arrest on the instant charges.

It is likewise relevant to inadequacy of the proposed third-party custodian and defendant's risk of non-appearance that Osby did not express surprise at her daughter's arrest on the instant charges, and she did not question defendant nor co-defendant Willie in any depth as might be expected as to the nature of defendant's activities or the nature of her involvement in drug trafficking. This is not a normal reaction of someone not previously aware of such activities. Rather, it is reasonable to infer that Osby was aware of defendant's activities for an extended time period, including her close gang associations with large amounts of currency shown through social media pictures, and through receipt of currency from defendant. In this respect, Osby is not credible in her testimony that she could not remember details of currency recently received from defendant. At best, Osby was willfully blind to defendant's illicit activities in conjunction with co-defendant Willie. In either event, Osby is not a suitable third-party custodian for defendant.

The court has also considered defendant's suggestion that defendant is highly educated and intelligent, without a criminal history, and thus not a flight risk or safety risk. As noted previously, under the circumstances, it is reasonable to infer that defendant employed those characteristics to

7

further the drug trafficking and money laundering conspiracy, by enabling her to handle financial transactions and conceal the illicit nature of funds. She also employed those traits to continue a sham home care business. These characteristics, in combination with her relationship with co-defendant Willie and the Grape Street Crips gang, create a risk factor for defendant's involvement in furthering the charged criminal activities and in furthering post-arrest efforts with Osby in coordinating disposition of currency and other contraband.

In addition, the court considers the lack of any proposed alternative third-party custodian in the instant district, and the lack of any suitable alternative arrangements proposed for defendant's release in California, apart from association with Osby. The court also notes that defendant's previous residence in Californa was subject of a break in during which currency in excess of $25,000 in currency in small bills was stolen. Defendant's history and close relationship with the Grape Street Crips gang provides a risk to her own safety and the safety of others, as well as contacts that could facilitate her movement and influence activities of others, such that the court finds no alternative arrangements at any level of restriction are possible in California. The court also takes into account that, while defendant does not have access to her passport, defendant has a history of international travel. All of the foregoing factors prevent the court from fashioning alternative conditions of release in this district or in California.

In sum, the court finds that no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of others and the community. Therefore, defendant must be detained before trial.

## CONCLUSION

Based on the foregoing, the magistrate judge's release order was in error. Accordingly, the government's appeal, construed as a motion for revocation of the same, (DE 19), is GRANTED.

IT IS ORDERED that defendant be placed in the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED, this the 19th day of May, 2021.

                                            LOUISE W. FLANAGAN
                                            United States District Judge